IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KRISTA  A. KARGER,

                            Plaintiff,                OPINION AND ORDER

      v.

                                                 07-cv-712-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Krista A. Karger seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because he erred in determining that she could perform her past relevant work as a dietary aide.  Specifically, plaintiff alleges that the adjudicator ignored favorable medical evidence and corroborating statements by third parties, failed to determine the demands of her past work and improperly rejected the opinions of her physicians.

1

I find that there is substantial evidence to support the administrative law judge's conclusion that plaintiff could perform her past work as a dietary aide.  Therefore, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on January 31, 1975 and attended special education classes in elementary and junior high school.  She graduated from high school and attended community college,  AR 56, 458-59, and had past work experience as a dietary aide.  AR 70.

In a work history report completed on August 1, 2004, plaintiff wrote that she was required to walk or stand for eight hours; sit for a half hour; stoop or crouch for two hours; handle, grab or grasp big objects for two hours; and reach for two hours.  She indicated that she had to lift food trays, push food carts and bring food items from the freezer.  The heaviest weight she lifted was 10 pounds.  AR 79.

On August 31, 2004, plaintiff completed a work history report about her work as a dietary aide at Martin Luther Manor from 1995-2000 and at Ellsworth Care Center from August 2001 to January 2003.  AR 100-102.  At the Martin Luther Manor, plaintiff worked

2

seven and a half hours a day, four or five days a week.  Her job duties included placing food on dishes, picking up dishes, cleaning and washing dishes.  The heaviest weight she lifted was 20 pounds.  AR 101.  At the Ellsworth Care Center, plaintiff had worked seven and a half hours a day, two or three days a week.  Her job duties included preparing food, stacking trays and dishes, cleaning tables, retrieving food from storage and going into the freezer.  The heaviest weight she lifted was 20 pounds.  AR 101.  Plaintiff reported that she had stopped working as a dietary aide in January 2003 because of problems resulting from her pregnancy.  AR 281.  On March 6, 2003, the Ellsworth Care Center completed a Social Security Administration Work Activity Questionnaire indicating that plaintiff's work was considered to be fully worth the amount paid to her.  AR 254.

Plaintiff filed an application for disability insurance benefits on May 10, 2004, alleging disability because of seizures, a learning disability, memory loss, poor motor skills and medication side effects since January 19, 2003.  AR 78.  Plaintiff's last insured date was March 31, 2005.

The local disability agency denied her application initially and upon reconsideration, finding that although plaintiff could not perform her past work she could perform work available in the national economy.  AR 167A.  Plaintiff then requested a hearing, which was held on February 13, 2007 before Administrative Law Judge David K. Gatto in Minneapolis, Minnesota.   The administrative law judge heard testimony from plaintiff, who was

3

represented by a lawyer, AR 456-462, and from a neutral vocational expert.  AR 462-66.  On May 23, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 16-25.  This decision became the final decision of the commissioner on November 7, 2007, when the Appeals Council denied plaintiff's request for review.  AR 6-8.

### B. Medical Evidence

Plaintiff was diagnosed with a seizure disorder at the age of two or three years old and is learning disabled.  AR 190.  On September 29, 1997, Dr. Robert Gumnit saw plaintiff for a consultation.  Plaintiff's mother reported that plaintiff had seventeen seizures in a one-hour period with each lasting three to five seconds.  She also reported that the seizures were causing her more difficulties at work and that she had been put on notice for absenteeism.  Dr. Gumnit examined plaintiff and noted no nystagmus, dysmetria, tremor or difficulty with tandem walking.  AR 317-18.

In October 1997, licensed psychologist Thomas Beniak evaluated plaintiff.  He administered the WAIS-III test, which indicated that plaintiff had a verbal IQ of 79, performance IQ of 86 and a full scale IQ of 80.  Beniak noted that plaintiff's overall intellectual capacity fell in the borderline to low average range, which was consistent with her educational and vocational background.  AR 193, 195.  Beniak concluded that plaintiff had generalized cerebral dysfunction but no evidence of intellectual deterioration.  AR 195.

4

He noted that plaintiff's attention-concentration ability was low average but that she had no problems comprehending or following instructions.  AR 193.

Dr. Richard Foreman, a neurologist, began treating plaintiff for epilepsy in November 2001.  AR 168.  He noted that a November 9, 2001 electroencephalogram of plaintiff's brain was mildly abnormal as a result of intermittent left temporal slowing but he saw no seizure discharges.  AR 383.  Dr. Foreman examined plaintiff on January 21, 2002 and found her cranial nerves, fundi, neuromuscular system, reflexes, coordination and gait normal.  AR 177.

On April 15, 2002, plaintiff saw Dr. Foreman again.  At that time, plaintiff was taking Neurontin, Lamictal and Depakote.  Foreman noted that plaintiff's neurological examination was normal and that she did not have any particular side effects from the medication.  AR 177.  On November 20, 2002, he increased plaintiff's Neurontin dosage because she reported having a seizure that lasted five minutes.  Her neurological examination remained normal.  AR 176.  When plaintiff saw Dr. Foreman on December 16, 2002, she was taking Neurontin, Depakote, Lamictal and folic acid.

Following plaintiff's alleged disability onset date of January 1, 2003, Dr. Foreman continued to treat plaintiff for her seizure disorder and periodically adjusted her medications.  On January 20, February 21, May 5 and December 1 of 2003 and May 4, 2004, Dr. Foreman reported that she continued to have normal cranial nerves, fundi, neuromuscular system, reflexes, coordination and gait.  In January 2003, plaintiff reported that she had a

5

spell where her arms were clenched across her chest and she was staring for a few minutes. Dr. Foreman increased her Neurontin dosage.  AR 170-175.

On October 26, 2004, Dr. Foreman saw plaintiff and indicated that she had not lost consciousness or motor control for the past 17 months.  He noted that plaintiff's cranial nerves, fundi, neuromuscular system, reflexes, coordination and gait were normal. Electroencephalography showed "some minimal to rare very momentary spike and slow symmetric discharges" and "rare scattered sharp discharges."  AR 169.

On November 1, 2004, Dr. Foreman completed a seizure questionnaire for plaintiff. He stated that plaintiff had generalized clonic-tonic and partial complex seizures.  He noted that her seizures varied in frequency, occurred several times in one to two months and were mostly momentary lapses with no aura.  Dr. Foreman noted that plaintiff rarely lost consciousness.  AR 168.

On November 5, 2004, plaintiff saw Dr. Rita Raverty, an obstetrician, because she was pregnant.  Plaintiff told Raverty that she had mild seizures every couple of days and that she had last had a major seizure during her previous pregnancy in January 2003.  Raverty noted that plaintiff's seizure disorder was being treated by Dr. Foreman.  AR 222-23.  On January 5, 2006, Raverty reported that plaintiff had no fatigue, no double vision, no headaches, fainting, seizures or tremors.  She indicated that plaintiff's cranial nerves, gait and deep tendon reflexes were intact.  Plaintiff's sensory exam also was normal.  AR 206-07.

6

On November 14, 2006, Dr. Foreman wrote a letter to plaintiff's mother concerning plaintiff's seizure disorder, stating:

> She is on multiple drugs for her epilepsy, continues to have brief non-convulsive spells of spacing out that it seems to me do occur in occasional flurries interspersed between times of freedom from these, and with several generalized seizure breakthrough over the last five years.

AR 190.  He indicated that although plaintiff's drug levels had stabilized, she was not free from seizures.  He added that plaintiff's mother had reported that plaintiff was experiencing fatigue and sleepiness as side effects of her medication.  AR 191.

On February 11, 2007, Dr. Peter Boardman completed a questionnaire at the request of plaintiff's lawyer because Dr. Foreman had retired.  Boardman responded "no" to the following question:  "Considering her symptoms, is she able to perform simple, unskilled, low-stress, <u>sedentary</u> work (as defined in the attachment), with normal breaks, on an 8-hour per day, 5 day per week sustained basis?"  He also wrote that this had been the case since 2001.  AR 237.  Boardman completed a second questionnaire on February 13, 2007, indicating that if plaintiff attempted to perform such work, she was more likely than not to experience an increase in the frequency and severity of her symptoms and have three or more unscheduled absences a month.  AR 239.

## C. Consulting Physicians

On April 30, 2003, a state agency physician assessed plaintiff's residual functional capacity.  He found that her only limitation was that she should avoid even moderate exposure to hazards, namely machinery and heights.  AR 442-49.  Another state agency physician affirmed the opinion on October 2, 2003.  AR 449.

On January 6, 2005, state agency consulting physician Dr. Pat Chan assessed plaintiff's physical residual functional capacity, noting that she had been diagnosed with a seizure disorder.  He concluded that plaintiff had no exertional limitations but could never climb ramps, stairs, ladders, ropes or scaffolds or work around dangerous moving machinery because of her seizures.  AR 182-89.  On April 26, 2005, a second state agency consulting physician affirmed this assessment.  AR 189.

On May 1, 2003, state agency consulting psychologist Jean Warrior completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record. She evaluated the evidence under the listing for mental retardation and noted that plaintiff had borderline intellectual functioning.  In addressing the "B" criteria for the listing, she found that plaintiff had mild restrictions of daily activities; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no episodes of decompensation.  AR 428-42.

Warrior completed a mental residual functional capacity assessment for plaintiff, finding that although plaintiff was "not significantly limited" in her ability to understand, remember and carry out very short and simple instructions, she was "markedly limited" with respect to detailed instructions.  She also found plaintiff moderately limited in her ability to maintain attention and concentration for extended periods, complete a normal work day and work week at a consistent pace, interact appropriately with the general public and respond appropriately to changes in the work setting.  However, Warrior found that plaintiff was "not significantly limited" in her ability to make simple work-related decisions and respond appropriately to supervisors and co-workers.  AR 424-25.  On October 1, 2003, consulting psychologist Roger Rattan affirmed Warrior's assessment.  AR 426.

### D.  Third-Party Statements

In support of plaintiff's application for disability benefits, plaintiff's mother completed a report, stating that plaintiff had two types of seizures:  grand mal seizures and complex partial seizures.  She also said that she lived one hour away from plaintiff and saw her on weekends.  AR 85-87.

On August 31, 2004, plaintiff's mother reported that she spent weekends and one day a week with plaintiff, taking her to the grocery store and hair appointments and helping her clean.  She reported that plaintiff prepared breakfast for her daughter, fed her, did dishes,

played with the baby most of the day and napped when the baby napped.  AR 109.

Plaintiff's mother wrote that plaintiff could count change, handle a savings account and use

a checkbook, AR 112, that her memory was poor and that she had problems concentrating,

understanding, following instructions and using her hands.  AR 114.

On November 2, 2004, plaintiff's mother completed another questionnaire, indicating

that plaintiff had two grand mal seizures a month in 2003 and one a month in 2004.  AR

123.  She wrote that plaintiff had nine petit mal seizures in a week and more than 20 in a

month, AR 125, and the plaintiff had no advance warning of the seizures.  AR 126.

In a report dated August 31, 2004, plaintiff's sister wrote that she had seen plaintiff

have a seizure in 1995.  She noted that plaintiff "seemed to wander off" to the side of the

hallway and collapsed on the floor.  After paramedics administered oxygen, plaintiff was able

to answer simple questions.  AR 108.

Plaintiff's husband reported that she had two grand mal seizures in a year and they

lasted about five minutes.  He also reported that she had four minor seizures a week and

these seizures lasted two minutes.  AR 120-21.


E.  Hearing Testimony

At the start of the hearing before the administrative law judge, plaintiff's attorney

conceded that plaintiff had not produced sufficient evidence to support a finding that any

10

of her impairments meet or equaled a listed impairment.  Plaintiff testified that she had stopped working as a dietary aide in January 2003 because she was pregnant and had had a seizure.  AR 455.  She testified that she took care of her developmentally-delayed three-year-old daughter and performed typical household chores.  AR 456.  She had never had a driver's license because of her seizures.  AR 457.

Plaintiff testified that her medication caused her to experience double vision and little seizures without warning.  AR 457.  She testified that the last time she had had a grand mal seizure was in January 2003 but that she had "little seizures" once or twice a day, which lasted two to five seconds and made her confused.  AR 457-58, 462.

Although plaintiff worked only part- time as a dietary aide, she believed that she could have worked full-time if her boss had given her more hours.  AR 459.  She testified that before she became pregnant, she was working four seven-hour days a week even though she had one seizure a week.  AR 460.  She testified that if she tried to work more, she had more seizures, would space out and forget things.  AR 460-61.

The administrative law judge called Barbara Wilson-Jones to testify as a neutral vocational expert.  Wilson-Jones testified that she had reviewed the record.  She asked plaintiff how she handled having seizures at work with her employer, but the administrative law judge advised her that it was not a vocational question.  AR 463.  The administrative law judge then asked Wilson-Jones whether plaintiff's past work could be performed by an

individual of plaintiff's age, education and work experience who was limited to unskilled work with no exposure to unprotected heights or dangerous machinery and no operation of motor vehicles.  AR 461.  Wilson-Jones responded that such an individual could perform plaintiff's past work as a dietary aide.  The administrative law judge then added the limitations that the individual would be absent or have to leave the workplace and not complete a full workday two or more times a month.  Wilson-Jones responded that such an individual could not perform plaintiff's past work.  AR 465.  The administrative law judge then asked her whether her testimony was consistent with the Dictionary of Occupational Titles, and she responded yes.  AR 466.

### F.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the period of her alleged onset date of January 19, 2003 through her last insured date, March 31, 2005.  At step two, he found that plaintiff had severe impairments of epilepsy and an "12.02 Organic Mental Disorder based on her history of a learning disorder and borderline intellectual functioning."  AR 19.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  With respect to her mental impairment, he found that she experienced only mild restrictions in her daily activities; mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and no episodes of decompensation of extended duration.  The administrative law judge also noted that plaintiff's attorney agreed that the evidence did not support a finding that her impairments meet or equal a listed impairment.  AR 20.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform unskilled tasks with no work at unprotected heights or around dangerous moving machinery and with no operation of motor vehicles.  In making this assessment, the administrative law judge considered all of the medical opinions of record, the statements from third parties and plaintiff's subjective complaints.

With respect to plaintiff's physical functional capacity, the administrative law judge relied on the assessments of the state agency physicians that she should be limited to work requiring no exposure to unprotected heights or dangerous moving machinery and he included these limitations in his assessment.  He gave little weight to Dr. Foreman's November 14, 2006 letter to plaintiff's mother, finding that it was inconsistent with the record, conclusory and generic and did not refer to specific medical records, tests or

13

examination and treatment findings. He also considered the forms completed by Dr. Boardman, but gave them little weight in the absence of any evidence that Boardman had ever examined or treated plaintiff. In addition, he found Boardman's submissions inconsistent with the overall record on or before plaintiff's last insured date. AR 23.

The administrative law judge adopted Dr. Beniak's opinion that plaintiff's borderline intellectual functioning and history of a learning disorder were consistent with a moderate limitation and the ability to perform unskilled tasks. AR 20. He indicated that Beniak had not imposed any specific intellectual or functional limitations on plaintiff and had reported that she had no problem comprehending or following instructions. The administrative law judge noted that this assessment was consistent with plaintiff's demonstrated ability to perform unskilled competitive work for several years and to raise her children, including one with developmental delays. He also found no evidence of any deterioration in plaintiff's mental ability since she had stopped working in January 2003. AR 23.

The administrative law judge found that plaintiff's testimony and the third-party statements concerning her limitations were not credible in light of the overall hearing record, objective medical evidence and significant inconsistencies in the record as a whole. He concluded that the objective medical evidence and course of treatment did not demonstrate physical abnormalities that could be expected to result in greater limitations than he had found. In support of his conclusions, the administrative law judge noted the following:

14

- Dr. Foreman had evaluated plaintiff as neurologically normal;

- On January 5, 2006, plaintiff denied fainting, seizures, tremors or muscle weakness;

- Plaintiff had not reported to Dr. Foreman or Dr. Raverty that she experienced "little seizures" as described at the hearing;

- Contemporaneously generated treating medical records were inconsistent with plaintiff's assertions about the frequency and unpredictability of her little seizures;

- The third-party statements in the record were inconsistent concerning the frequency of plaintiff's seizures;

- Plaintiff had not required hospitalization or emergency room treatment for seizures; and

- No treating or examining physician had limited plaintiff's function beyond the limitations that he had found.

AR 22.

In addition to the medical evidence, the administrative law judge considered other relevant factors in assessing her credibility. Social Security Ruling 96-7p. He considered plaintiff's reported side effects of double vision and dizziness from her seizure medication. However, he noted that she did not report these side effects to any medical professional on or before her last insured date and no changes had been made in her medication since 2003. He noted also that plaintiff had not testified that these side effects interfered with her active daily routine. In any event, he accounted for them, stating that "the residual functional capacity has been reduced due to seizure precautions, which would also apply to the alleged

15

side effects, so it does not need to be further reduced specifically for the alleged double vision and dizziness."  AR 22-23.

The administrative law judge determined that plaintiff had an active daily routine that included taking care of her children, performing household chores, shopping and managing her finances.  The third-party statements confirmed this and did not support any further limitations of plaintiff's ability to work.  Finally, he considered plaintiff's work history, observing that plaintiff had performed competitive level work with the same diagnosed conditions and frequency of seizures and episodes.  In support, he cited her testimony that she had as many seizures when she was working as she experienced when not working and that she could have worked more hours at her last job than she had.  AR 24.

Also at step four, the administrative law judge found that plaintiff's past work as a dietary aide met the definition of past relevant work.  Before the hearing, the vocational expert had submitted a vocational analysis of the dietary aide position in which she had concluded that it was defined in the Dictionary of Occupational Titles (319.677-014) as an unskilled and medium exertional level position.  The administrative law judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles.  He determined that plaintiff was able to perform her past work as a dietary aide:

16

>In comparing the residual functional capacity the claimant had as of the date last insured with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as it was generally performed in the national economy at the unskilled medium level.

AR 24.

## OPINION

### A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the

commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Analysis

Plaintiff makes several arguments in support of her assertion that the administrative law judge erred in determining at step four that she could perform her past relevant work as a dietary aide.  She contends that the adjudicator failed to develop the record and made erroneous findings of fact with respect to her residual functional capacity, the physical and mental demands of her past job and his conclusion that her residual functional capacity would permit a return to her past job.  Social Security Ruling 82-62.

### 1.  Residual functional capacity finding

Relying heavily on the opinions of the state agency physicians, the administrative law judge determined that plaintiff's epilepsy prevented her from working around unprotected heights and dangerous moving machinery and from driving a car.  He also found that with her impairments of borderline intellectual functioning and learning disorder, she retained

18

only the mental residual functional capacity to perform unskilled work.  Plaintiff argues that in making these findings, the administrative law judge ignored medical evidence and other corroborating evidence concerning the frequency and severity of her seizures and her non-exertional limitations.

a.  Physical impairments

Plaintiff challenges the administrative law judge's failure to mention the fact that on January 19, 2003, she had a grand mal seizure for which she was taken by ambulance to the hospital and his allegedly erroneous conclusion that she stopped working in 2003 because of her pregnancy and not because of her pregnancy.   Although the administrative law judge did not discuss plaintiff's grand mal seizure in detail, he did not have to.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995) (administrative law judge need not provide complete written evaluation of every piece of testimony and evidence).  It is clear that he considered and accounted for the grand mal seizure in making his residual functional capacity assessment:. he referred to the seizure more than once in his decision and heard plaintiff's testimony about the event at the hearing.  (The record did not contain an emergency room report or progress notes from that date.)  Relying in part on the grand mal seizure, he found that plaintiff could not work at unprotected heights or around dangerous machinery or operate a motor vehicle.  In discussing plaintiff's mental impairments, the administrative law judge

19

found "no evidence of any deterioration in her mental ability since she terminated her work in January 2003 due to her pregnancy."  AR 23.  Although this statement suggests that he viewed her pregnancy as the reason she left work, it is clear from the remainder of his decision that he gave appropriate consideration to the effect of the grand mal seizure. In any event, even plaintiff testified that she stopped working in January 2003 because "she was pregnant and had a seizure."

Plaintiff also contends that the administrative law judge disregarded evidence about the frequency and severity of her smaller seizures.  She refers to statements that she made in her disability reports and notes from 2004, a 1997 consultation by Dr. Gumnit, third-party statements of her mother, sister and husband and the opinions of Dr. Foreman and Dr. Boardman.  None of this evidence required the administrative law judge to give more weight to the smaller seizures.

Plaintiff's self-reports of her seizures are cumulative of her hearing testimony, which the administrative law judge found not entirely credible.  Plaintiff has not challenged the credibility determination.  It was reasonable for the administrative law judge to discount Dr. Gumnit's report because it merely repeated plaintiff's subjective complaints.  Diaz, 55 F.3d at 307 (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible).  Moreover, Gumnit's one-time physical

20

examination not only found no abnormalities but it predated the alleged onset of plaintiff's disability.  That report is not persuasive evidence of plaintiff's limitations.

With regard to the third-party statements, the administrative law judge considered them but found they did not warrant the addition of any further limitations to plaintiff's residual functional capacity assessment.  Although he viewed the statements as sincere, he found them inconsistent regarding the frequency of plaintiff's symptoms.  Further, given plaintiff's testimony about her seizures and limited abilities, the statements from her family members do not constitute a separate line of evidence, but rather serve to reiterate and thereby corroborate plaintiff's testimony.  Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); see also Briscoe ex rel Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); Carlson, 999 F.2d at 181.  Therefore, to the extent that the administrative law judge found plaintiff's testimony not credible, he necessarily found the third-party statements unconvincing.  Books, 91 F.3d at 980.  Accordingly, the administrative law judge did not err by failing to give greater weight to the statements.

Plaintiff criticizes the administrative law judge's decision to place little weight on Dr. Foreman's November 14, 2006 letter, in which he reported that plaintiff was not seizure-free and that she suffered the side effects of fatigue and sleepiness.  The administrative law judge found the letter to be inconsistent with the record, conclusory and generic.  In explanation,

21

he noted that Foreman did not refer to any specific medical records, tests or examination or treatment findings.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, the consistency of the physician's opinion with the evidence as a whole, and other factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion. Id. He also must base his decision on substantial evidence and not mere speculation. White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

22

The administrative law judge gave good reasons for giving little weight to Dr. Foreman's letter to plaintiff's mother.  Apart from recounting plaintiff's subjective complaints, which the administrative law judge was entitled to discount, Foreman stated only that plaintiff was not "seizure free."  He did not assign any specific limitations to plaintiff or cite support for his broad statement.  In fact, the record shows that all of his neurological examinations of plaintiff were normal, her 2001 electroencephalogram was only mildly abnormal, and as of October 26, 2004, she had not lost consciousness or motor control for 17 months.  Further, during a January 2006 examination by Dr. Raverty, plaintiff reported that she had no fainting, seizures, tremors or muscle weakness.

I am not persuaded that the administrative law judge should have given more weight to the opinion of Dr. Boardman, who filled out two questionnaires about plaintiff in February 2007 after Dr. Foreman retired.  As the administrative law judge stated, there is no evidence that Boardman ever examined or treated plaintiff.  The forms completed by Boardman were inconsistent with the overall record on or before plaintiff's last insured date.  Moreover, the forms merely required Boardman to circle "yes" or "no" in response to pre-typed questions.  Although Boardman he may have reviewed Foreman's treatment notes, he did not cite them or any other medical findings, stating only that "EEG, neuroimaging" established the existence of her impairments.  AR 237.

23

b.  Mental impairments

Plaintiff asserts that the administrative law judge erred by not expressing her functional capacity in terms of her abilities to "understand, carry out and remember instructions;" "use judgment in making work related decisions;" or "respond appropriately to supervision, coworkers and work situations."  In fact, the administrative law judge found specifically that plaintiff retained the mental residual functional capacity to perform unskilled tasks.  The regulations state that unskilled tasks require the ability to understand, remember and carry out only simple instructions; make simple work-related decisions; respond appropriately to supervision, coworkers and usual work situations; and deal with changes in a routine work setting.  SSR 96-9p; see also Maggard v. Apfel, 16 F.3d 376, 380 (7th Cir. 1999) (administrative law judge properly found that claimant's low IQ scores did not demonstrate mental retardation where evidence showed that claimant able to relate to coworkers and supervisors, understand and follow instructions, maintain attention required to perform simple, repetitive tasks and withstand stress and pressures associated with daily work).

In determining that plaintiff had the mental residual functional capacity to perform unskilled tasks, the administrative law judge reasonably relied on Dr. Beniak's report and the mental residual functional capacity assessment completed by state agency psychologist Jean Warrior.  Beniak did not impose any specific intellectual or functional limitations on

24

plaintiff and noted that she had no problem comprehending or following instructions. Although Warrior found that plaintiff was "markedly limited" in her ability to understand, remember and carry out detailed instructions, she found that plaintiff was "not significantly limited" in her ability to understand, remember and carry out very short and simple instructions. Warrior also found that plaintiff was "not significantly limited" in her ability to make simple work-related decisions or respond appropriately to supervisors and co-workers and only moderately limited in her ability to respond appropriately to changes in the work setting.

In addition to the medical evidence, the administrative law judge considered plaintiff's daily activities and her demonstrated ability to work as a dietary aide with her mental impairment until 2003. Plaintiff suggests that the administrative law judge overemphasized her ability to perform household tasks. However, the administrative law judge reasonably could conclude that plaintiff's daily activities of cleaning, washing clothes, cooking and caring for her developmentally-delayed child were consistent with the mental ability to do unskilled work. He noted also that plaintiff's mental ability had not deteriorated since she quit working. In sum, there is substantial evidence in the record to support the administrative law judge's decision that plaintiff retained the mental residual functional capacity to perform unskilled work.

2.  Demands of past work and ability to perform it

Plaintiff argues that the administrative law judge summarily concluded that she could return to her past relevant work without making specific factual findings about the physical and mental demands of her past job as required by Social Security Ruling 82-62.  However, prior to the hearing, the vocational expert submitted a neutral vocational analysis of plaintiff's past work as a dietary aide.  AR 155.  At the hearing, the expert testified that this position was defined in the Dictionary of Occupational Titles (319.677-014) as unskilled work at a medium exertional level.  Although the administrative law judge did not discuss the specific tasks that plaintiff performed as a dietary aide, plaintiff stated in her disability reports and testimony that she prepared food, placed food on trays, lifted food trays, pushed food carts, brought food items from the freezer, picked up dishes, cleaned tables and washed dishes.  Both the vocational expert and the administrative law judge had access to this information in the record.  The administrative law judge could rely on the vocational expert's testimony that plaintiff's job was consistent with the definition of dietary aide in the Dictionary.

Plaintiff contends that the administrative law judge failed to consider whether she could perform her past relevant work as she actually performed it.  Social Security Ruling 96-8p.  Specifically, she asserts that he failed to consider whether her work as a dietary aide was performed under special circumstances.  If it was, it may not qualify as substantial gainful

26

activity.  20 C.F.R. § 404.1573.  Special circumstances include receiving assistance from other employees in performing work, being allowed to work irregular hours and take frequent rest periods, being provided special equipment, being able to work only because of special arrangements, being allowed to work at a lower standard of productivity or efficiency than other employees and being allowed the opportunity to work because of a family relationship or special relationship with employer.  Id.

Although the administrative law judge did not address this regulation in his decision, he found specifically that plaintiff's part-time work as a dietary aide was substantial gainful activity.  Apart from referring to seizure events, plaintiff points to no evidence in the record to indicate that her past relevant work as a dietary aide was performed under special circumstances.  In fact, there is evidence in the record that her work at the Ellsworth Care Center was considered to be fully worth the amount paid to her.  Contrary to plaintiff's assertion, the administrtaive law judge did not fail to consider evidence that her work as a dietary aide was performed under special circumstances or at a different exertional and skill level from that described in the Dictionary of Occupational Titles.

At the hearing, the vocational expert testified that an individual of plaintiff's age, education, work experience and residual functional capacity could perform plaintiff's past work.  Plaintiff suggests that because the administrative law judge failed to allow the vocational expert to inquire about the reaction of her employer to her seizures, he did not

27

properly consider whether she was able to perform her past work as it is performed in the national economy.  This argument lacks merit in light of the evidence in the record that plaintiff continued to work competitively while experiencing seizures.

Finally, plaintiff mentions that an initial and reconsideration worksheet completed by the disability determination bureau shows that plaintiff could not perform her past work but could perform other work in the economy.  This undated report does not outweigh the substantial evidence in the record that plaintiff could perform her past work.  In sum, I find that the administrative law judge did not err in making his step four finding.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Krista Karger's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 3rd day of July, 2008.

BY THE COURT:

BARBARA B. CRABB
District Judge

28